# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOVA BENEFIT PLANS, LLC<br>as Sponsor of the GRIST MILL TRUST<br><br>Plaintiff,<br><br>-against-<br><br>UNITED STATES OF AMERICA acting through<br>COMMISSIONER OF INTERNAL REVENUE,<br><br>Defendant. | Civil Action No. _____<br><br><br>APRIL 19, 2013 |

## COMPLAINT

Plaintiff, by its attorneys, as and for its Complaint against the United States of America acting through the Commissioner of Internal Revenue ("the Commissioner"), alleges:

### Jurisdiction, Venue and Nature of Action

1.     This action for a Declaratory Judgment pursuant to 28 U.S.C. §2201(a) arises out of the Defendant's arbitrary and capricious threatened assessment of a penalty under §6708 of the Internal Revenue Code ("IRC"), based on the unreasonable search and seizure of the Plaintiff's property on April 20, 2010.

2.     This Court has jurisdiction of these claims for relief by virtue of 28 U.S.C. §1331.

3.     Venue is proper in this District pursuant to 28 U.S.C. §1391(e).

4.     In this action, Plaintiff seeks a return of its property under §41(g) of the Federal Rules of Criminal Procedure; a declaration that Plaintiff is not, and never has been, a "material advisor" as defined in IRC §6111 and, as such, is not subject to a penalty under IRC §6708; a declaration that the Grist Mill Trust (the "Grist Mill Trust") is a welfare benefit plan that qualifies under IRC §419(e) but is not a so-called "419 plan" as described under IRC §419A(f)(6) pertaining

to 10-or-more employer plans;" that the Grist Mill Trust has never been and is not now a "listed transaction" or a "reportable transaction" as those terms are used in the Treasury Regulations; and that all contributions made by participating employer to the Grist Mill Trust are deductible in their entirety over time under the combination of IRC §419(b) and the automatic and unlimited carryover provision of §419(d).

5.      Plaintiff brings this action because the Internal Revenue Service (the "IRS") has threatened to assess a penalty under IRC §6708, which penalty assessment is wholly arbitrary, capricious and erroneous in order to penalize the Plaintiff out of existence with a $10,000 a day unlimited fine, just so that it can make similar arbitrary and capricious penalty assessments against the participating employers in the Grist Mill Trust.  The sole purpose of this unreasonable search and seizure and the penalty under IRC §6708 is to put the Plaintiff and the Grist Mill Trust out of business.  Despite the Plaintiff's vehement challenges to such proposed assessment, and Plaintiff's demonstrating that it is not a "material advisor" with respect to a "reportable transaction," the IRS has advised the Plaintiff that it has determined that Nova is subject to the penalty under IRC §6708 and that such penalty assessment is imminent.  Thus, the Plaintiff has exhausted all of its administrative remedies with the IRS and is forced to file this action and protect the Constitutional rights of participating employers in the Grist Mill Trust.

## The Parties

6.      Plaintiff is a limited liability company organized under the laws of the State of Delaware and it maintains its place of business in Simsbury, Connecticut.

7.      During the period 2004 through the present time, the Plaintiff was the Sponsor, Trustee and Named Fiduciary of the Grist Mill Trust.  In this capacity it served merely as the signatory for documentation pursuant to which employers seeking to participate in the Grist Mill

Trust became participating employers, and selected their individual covered employees to become insured participants in the Grist Mill Trust with death benefits payable to their designated beneficiaries.  As such, its role was purely administrative and in the administration of a fully-insured death benefit only welfare benefit plan.

8.      Defendant is the United States of America acting through the Commissioner.

**The Declaratory Judgment Act and the Anti-Injunction Act Do Not Preclude This Complaint**

9.      Although the Commissioner is a party, this action is not proscribed by either the Declaratory Judgment Act (28 U.S.C. §2201(a)) or the Anti-Injunction Act (IRC §7421(a)).

10.      The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person …."  IRC §7421(a)  (Emphasis added)

11.      Similarly, the Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, except with respect to federal taxes ..., any court of the United States, upon the filing of an appropriate pleading may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. §2201(a) (Emphasis added).

12.      The purpose of exempting tax proceedings from the Anti-Injunction Act and the Declaratory Judgment Act is to prevent disruptions in the federal revenue process, not to limit judicial review of a matter solely because it is somehow related to taxes.  Joslin v. Secretary of Dept. of the Treas., 616 F. Supp. 1023 (D. Utah 1985).  Where, as here, a statute requires the doing of an act and as a sanction imposes a pecuniary punishment for the failure to do such act, then it is a penalty, and not a tax.  Consumers & Producers Assn. v. State of Okla., 48 AFTR2d 81-5679 (1981).  In other words, a penalty is an exaction imposed by statute as a punishment.  United States

v. LaFranca, 282 U.S. 568, 572 (1931).  Where, as here, the statute describes the penalty as a penalty and not a tax, neither the Anti-Injunction Act nor the Declaratory Judgment Act applies. National Federation of Independent Business v. Sebelius, 132 S. Ct. 2566, 2584 (2012) ("In light of the Code's consistent distinction between the terms 'tax' and 'assessable penalty'…[the Secretary's] authority to assess taxes includes the authority to assess penalties, but it does not equate assessable penalties to taxes for other purposes.").

13.     IRC §6111, as amended, requires each "material advisor" with respect to any "reportable transaction" to make a "return" in such form as the Secretary of the Treasury may direct.

14.     Under IRC §6111, as amended, any material advisor who fails to maintain a list of investors in potentially abusive tax shelters or reportable transactions and to make that list available to the IRS on its written request within 20 business days after the date of the request is liable for a $10,000 per day penalty for that failure after the 20th day.  See IRC §6708(a)(1), as amended by the 2004 American Jobs Creation Act, §817(a), P.L. 108-357 ("AJCA").

15.     As the statute specifically provides that the exaction imposed on a "material advisor" who does not comply is a penalty and not a tax, such exaction is not subject to the Anti-Injunction Act (IRC §7421) or the Declaratory Judgment Act (28 U.S.C. §2201(a)).

**The Raid**

16.     On April 20, 2010, the offices of the Plaintiff were raided by the Criminal Investigation Division ("CID") of the IRS, which was conducting a search for abuses relating to IRC §419A(f)(6) plans, which, by statute, are exempt from the limitations imposed by IRC §§419 and 419A.  (See copy of the search warrant annexed hereto as **Exhibit A**).  The Grist Mill Trust is not a IRC §419A(f)(6) plan, and, therefore, the CID's raid of the Plaintiff's offices at 100 Grist Mill

Road was illegal, illegitimate and unconstitutional, especially as it relates to the Grist Mill Trust and the property illegally seized.

17.     In such raid, some 70 heavily-armed CID agents seized more than <u>75</u> boxes of files and documents belonging to the Grist Mill Trust (of the 322 boxes seized during the illegal raid), including *Original - In Force - Live* life insurance policies on the lives of Grist Mill Trust participants.

18.     Despite the fact that the raid took place nearly three years ago and the Honorable Judge Alfred Covello ordered in Court the return of all property not relevant to so-called "419 plans."  The Plaintiff has received **none** of its property back, despite the fact that it is not a so-called "419 plan" by any definition of the term as it applies to plans as described under IRC §419A(f)(6). The CID has returned virtually none of the Plaintiff's documents, nor have any legal proceedings been initiated against the Plaintiff based upon the seized documents.  Through this action, Plaintiff seeks the return of all of the documents that were wrongfully seized by CID in the raid.

## The Penalty

19.     On June 14, 2011, the IRS sent a letter to Plaintiff.  Plaintiff responded by letter dated July 20, 2011, but the IRS disregarded the Plaintiff's response in its entirety, and sent another letter dated June 12, 2012.  Again, the Plaintiff responded by letter dated June 28, 2012, but the IRS, once again ignoring Plaintiff's response, sent a third and final letter dated March 11, 2013. (A copy of each of the IRS requests is annexed hereto as **Exhibit B**, and a copy of the Plaintiff's recent response to the IRS's letter, dated April 3, 2013 is annexed hereto as **Exhibit C**).

20.     The Plaintiff is the Sponsor of the Grist Mill Trust, which is an amalgamation of single employer plans and which qualifies as a welfare benefit plan under IRC § 419(e) and, as

such, is not a "419 plan" as described under IRC §419A(f)(6), or a reportable transaction as described under IRC §6011.

21.     The IRS did not specify any tax year or years, or any taxable period whatsoever, for which the penalty was being proposed.

22.     The IRS letter stated that the penalty was being proposed because of the Plaintiff's association with the Grist Mill Trust, which it deemed to be a reportable transaction.

23.     The grounds for the proposed assessment against Plaintiff are that Plaintiff was a "material advisor" with respect to the Grist Mill Trust, that the Grist Mill Trust was a reportable transaction and that, as a "material advisor" to the Grist Mill Trust pursuant to IRC §6111, Plaintiff has had a reporting requirement under IRC §6112.  The IRS has not specified what years are at issue or what evidence it has of these violations, despite repeated requests by Plaintiff.

24.     Plaintiff was not a "material advisor" with respect to the Grist Mill Trust and, in any event, the Grist Mill Trust was not a reportable transaction at any time.

## A Case or Controversy Exists

25.     Under the circumstances described in ¶¶ 1 through 24, an actual case or controversy exists.  A declaratory judgment is the most effective and economical manner in which to proceed to resolve this dispute, and this dispute is ripe for adjudication.

## FIRST CLAIM FOR RELIEF

### There Is No Basis for the Proposed Penalty Assessment as Plaintiff Is Not and Never Was a "Material Advisor"

26.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 25 as if fully set forth hereat.

27.     The Plaintiff does not meet any of the requirements to be deemed a "material advisor" as defined under IRC §6111 and the Treasury regulations thereunder:

     a.   Plaintiff did not provide any material aid, assistance or advice with respect to organizing, managing, promoting, selling, implementing, insuring or carrying out any reportable transaction;

     b.   Plaintiff does not give any tax advice nor has it written any tax opinions or made any "tax statements";

     c.   Plaintiff has never been paid anything for giving tax advice;

     d.   Plaintiff has not been paid anything -- much less the threshold amounts of $250,000 or $25,000 for -- giving tax advice with respect to a reportable transaction;

     e.   Plaintiff is not in the business of giving "tax advice" or making "tax statements";

     f.   Plaintiff has never received a commission or payment of any kind for providing "insurance" to a reportable transaction;

     g.   Plaintiff is not directly or indirectly related to anyone that meets any of the above criteria; and

     h.   Plaintiff has never been anything other than an affiliate to an employee benefit plan that provides death benefits for the families of the covered employees of participating employers.

28.    Since Plaintiff is not a "material advisor" under IRC § 6111, neither Plaintiff nor any of its officers, employees, or affiliates have ever been responsible for maintaining a list as required under IRC § 6112(a).

29.    As Plaintiff is not required to maintain a list under IRC § 6112(a), neither it nor any of its employees can be held accountable for any failure to maintain a list that would lead to any form of penalty under IRC § 6708.

30.    IRC § 6708 also provides that "[n]o penalty shall be imposed by paragraph (1) with respect to the failure [to maintain or file a form or list] if such failure is due to reasonable cause." As Plaintiff is not required to file a form or maintain a list because it is not a "material advisor," Plaintiff has the ultimate "reasonable cause" and no penalty can be assessed against Plaintiff on these grounds.

31.     The IRS's website states that it was first updated to add the new requirements under IRC § 6112, including the new penalty under IRC § 6708, in December 2007.  The website further states that the statute of limitations for assessing a penalty under IRC § 6708 is three years.

32.     Plaintiff was never an organizer of an "abusive" tax shelter or, indeed, any tax shelter.

33.     The IRS's own regulations clearly limit the penalty to "material advisors" who "make a tax statement under § 301.6111-3 **on or after August 3, 2007**."  Treas. Reg. § 301.6112-1(g) (emphasis added).  Even if the Plaintiff was a "material advisor" – which it is not – it certainly has made no tax statement on or after August 3, 2007, or at any time.


## SECOND CLAIM FOR RELIEF

### There Is No Basis for the Penalty Assessment as the Grist Mill Trust Is Not and Has Never Been a Reportable Transaction

34.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-33 as if fully set forth hereat.

35.     Even if Plaintiff met the definition of a "material advisor" with respect to the Grist Mill Trust, it would not be subject to a penalty under IRC § 6708 inasmuch as the Grist Mill Trust is not, and has never been, a reportable transaction.

        A.  The Grist Mill Trust

36.     The Grist Mill Trust is a fully insured welfare benefit plan under IRC § 419(e) that complies with the requirements of IRC §§ 419 and 419A.  Contributions to the Grist Mill Trust are deductible under IRC § 419(b) and the unlimited carry-forward provision of IRC § 419(d).

37.     The Grist Mill Trust provides only death benefits to eligible employees of participating employers.  Upon joining the Grist Mill Trust, a participating employer executes an

adoption agreement, which identifies those employees who are eligible to participate in the Grist Mill Trust and the amount of their death benefit.

38.    The cost to a participating employer of providing the death benefit is computed by reference to the table set forth at Treas. Reg. § 1.79-3(d)(2) and the actuarial calculations described in IRC § 7702.

39.    The costs paid to the Grist Mill Trust by a participating employer for benefits are not returned, refunded or rebated to an employer.

40.    Moreover, no employer is, directly or indirectly, a beneficiary of any insurance policy owned by the Grist Mill Trust, since the Grist Mill Trust and the trust that holds the Grist Mill Trust's assets thereunder are named as both the owner and the beneficiary of all insurance policies that are purchased within the Grist Mill Trust.

41.    The benefits that are promised under the Grist Mill Trust are fully reinsured through the Grist Mill Trust's purchase of individual life insurance policies on the lives of covered employees.

42.    The Grist Mill Trust's benefits are payable to the beneficiary or family member of a covered employee of a participating employer only in the event of the employee's death and are provided only so long as that individual remains a covered employee of the participating employer.

43.    In the event of the employee's separation from service of a participating employee or the participating employer's termination of the Grist Mill Trust, the benefits under the Grist Mill Trust are forfeited except to the extent conversion rights exist under State law or the covered employee elects to purchase the policy on his life at its fair market value, under the principles set forth in Rev. Proc. 2005-25, 2005-1 C.B. 962.  Any gains arising by way of such forfeiture (i.e.,

from the sale or surrender of policies covering such terminated employees) belong to the Grist Mill Trust and are used to cover its expenses.

B. <u>The List Maintenance Requirements Are Inapplicable to the Grist Mill Trust</u>

44.     Under IRC §6112(a), as amended, any material advisor of a reportable transaction is required to maintain a list that not only identifies advisees, but also contains such other information as the Treasury Secretary may require.

45.     The pre-AJCA definition of an "abusive" tax shelter under former IRC § 6111 reflects that no valid welfare benefit plan could ever meet the 2-to-1 write off requirement of former IRC § 6111(c) or the registered security and confidentiality requirements of IRC § 6111(d).

46.     Under post-AJCA law, an arrangement is deemed to be a "reportable transaction" only if it is described in Treas. Reg. § 1.6011-4(b)(2)-(7).  Thus, to be considered a reportable transaction, one of the following criteria under the regulations or proposed regulations must be met:

1.     The transaction is the same or substantially similar to a listed transaction;

2.     The taxpayer has participated in the transaction under conditions of confidentiality;

3.     The taxpayer has obtained or been provided with contractual protection that it will be entitled to a refund of fees if the intended tax consequences are not sustained;

4.     The transaction results in a Section 165 tax loss in excess of $10 million for a corporation or $2 million for individuals, partnership, without corporate partners, and S corporations;

5.     A transaction has been identified by the IRS as a transaction of interest; and

6.     A transaction is one for which a taxpayer pays a fee to a patent holder or its agent for the right to use a tax planning method.  Claiming a tax credit exceeding $250,000 if the underlying asset giving rise to the credit is held by the taxpayer for 45 days or less.

The only criterion of the foregoing six that the IRS has ever claimed is applicable to the Grist Mill Trust is the first: i.e., that the Grist Mill Trust is "substantially similar" to a "listed transaction".

47.    A listed transaction is defined as any transaction that is the same or substantially similar to one of the types of transactions that the IRS has determined in published guidance to be tax avoidance transactions.  Treas. Reg. § 1.6011-4(b)(2).

48.    The term "substantially similar" includes any transaction that is expected to result in the same or similar types of tax consequences and that is either factually similar or based on the same or similar tax strategy.  Treas. Reg. § 1.6011-4(c)(4).

49.    The IRS has most recently enumerated all currently listed transactions in Notice 2009-59.  Notice 2009-59 includes as a listed transaction an arrangement that is "the same or substantially similar" to the one described in Notice 2007-83, 2007-2 C.B. 960, which includes certain arrangements involving a trust or other fund described in IRC § 419(e)(3) that is purportedly a welfare benefit fund and pays premiums on one or more life insurance policies with respect to which value is accumulated, where the employer has deducted contributions in excess of specified amounts.  Such arrangements were identified as "listed transactions" on October 17, 2007.

50.    Notice 2009-59 also includes as a listed transaction arrangements that are the same or substantially similar to the one described in Notice 95-34, 1995-1 CB 309, but that Notice is inapplicable to the Grist Mill Trust because it applies only to multiple employer plans that purport to qualify under IRC § 419A(f)(6).  See PLR 201027007.  The Grist Mill Trust, as described above, is an amalgamation of single employer plans and the Grist Mill Trust is a welfare benefit plan under IRC § 419(e) that does not purport to qualify under IRC § 419A(f)(6).  Accordingly, Notice 95-34 is wholly inapplicable to the Grist Mill Trust.

51.     At the same time as Notice 2007-83 was issued, the IRS issued Rev. Rul. 2007-65, which holds that for purposes of deducting contributions under IRC §419, a welfare benefit fund's qualified direct cost does not include premium amounts for cash value life insurance policies acquired by the welfare benefit fund, in instances where the fund is directly or indirectly a beneficiary under such policies within the meaning of IRC § 264(a).

52.     Moreover, IRC § 264 provides for the disallowance of a deduction of the cost of insurance where the taxpayer is the direct or indirect beneficiary of such insurance.  Neither the participating employer nor the Grist Mill Trust is ever the direct or indirect beneficiary of a policy under the Grist Mill Trust, and, accordingly, IRC § 264 is wholly inapplicable to the Grist Mill Trust.

53.     The Grist Mill Trust is an entity that was formed for the purpose of providing permissible employee welfare benefits under Treas. Reg. § 162-10; does not serve as any sort of agent for any participating employer; and is fully independent from each participating employer. The Grist Mill Trust oversees billing, premium payments, plan administration and tax reporting compliance, and no employer has any involvement with the operational aspects of the Grist Mill Trust.

54.     Further, it is the Grist Mill Trust, and not the participating employers, that is the applicant for the life insurance policies, as well as the owner, both beneficially and of record of the insurance.  The Grist Mill Trust pays the premiums on the policies, and as owner (but not as beneficiary), receives the insurance proceeds.  The employer has no de facto relationship to the policies, including any access to the cash surrender value of the policies or the ability to borrow from the policies, because those rights belong exclusively to the Grist Mill Trust.

55.     The employer may not assign or pledge any of the benefits under the Grist Mill Trust, and there is no reversion to the employer of any contributions to the Grist Mill Trust.  Under no circumstances is the employer ever a beneficiary under any employee's policy.

56.     The Grist Mill Trust makes clear to each participating employer that the Grist Mill Trust is not a retirement plan or a plan of deferred compensation, and, as a matter of course, the Trust enforces the forfeiture provisions that are an integral part of the Grist Mill Trust.

57.     Accordingly, the Grist Mill Trust is wholly distinguishable from the arrangements described in Notice 2007-83 and Rev. Rul. 2007-65, as participating employers are not beneficiaries, directly or indirectly of the insurance policies owned by the Grist Mill Trust, and because the Grist Mill Trust does not serve as an agent or proxy of the employer.  Thus, IRC § 264 is wholly inapplicable to the Grist Mill Trust.

58.     As the Grist Mill Trust is in no way similar to a transaction described in Notice 2007-83, the Grist Mill Trust does not constitute a "listed" transaction under Notice 2009-59.

59.     Consequently, the Plaintiff is not a material advisor under IRC §6111, and the Plaintiff is not subject to any list maintenance requirement under IRC § 6112.  Therefore, there can be no penalty assessed under IRC § 6708 as a matter of law.


**THIRD CLAIM FOR RELIEF**

**The Plaintiff Has Reasonable Cause Under IRC §6708(b)**

60.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-59 as if fully set forth hereat.

61.     IRC § 6708(b) provides for abatement of the penalty in the event the taxpayer demonstrates "reasonable cause."

62.     IRC § 6664(c)(1) provides that no penalty shall be imposed under IRC § 6662(a) with respect to any portion of an underpayment if it is shown that there was reasonable cause therefor and the taxpayer acted in good faith.  Whether the taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis taking into account all of the pertinent facts and circumstances. Treas. Reg. § 1.6664-4(b).

63.     Relevant factors include the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a professional, such as an accountant.

64.      Moreover, an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.

65.     In any case, reliance on professional advice "constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith."  Treas. Reg. § 1.6664-4(b).

66.     As evidenced by the foregoing, a taxpayer's good faith reliance on the advice of a competent tax advisor can constitute reasonable cause to abate the accuracy-related penalty, and this is evidenced not only by the regulations, but also by the Internal Revenue Manual ("IRM") and by case law.  See IRM, Administrative, Part (20)310 (recently renumbered as IRM 120.1 but substantively unchanged).  As set forth at former IRM (20)333.7:

> Reasonable cause may be established if the taxpayer claims reliance
> on the advice of a competent tax advisor, i.e., tax attorney, certified or
> licensed public accountant or enrolled agent.  This may constitute
> reasonable cause if the taxpayer contacted a tax advisor who is
> competent on the specific tax matter and the taxpayer furnished
> necessary and relevant information, but was incorrectly advised.
> Further, the taxpayer exercised ordinary business care and prudence

in determining whether to secure further advice, based on the taxpayer's own information and knowledge.

67.     The Plaintiff was advised by the prominent law firms of Edwards & Angell and Wormser, Kiely, Galef & Jacobs LLP, who were fully knowledgeable of all relevant matters involved here, over the course of five opinion letters spanning several years' time that the Grist Mill Trust qualified under IRC § 419(e), that the Grist Mill Trust was not at all any form of tax shelter or reportable transaction, Rev. Rul. 2007-65 and Notice 2007-83 were inapplicable thereto, and consequently, that there was no list maintenance requirement with respect to the Plaintiff or anyone else associated with the Grist Mill Trust.

68.     Furthermore, the advisors' conclusions were reasonable and in accord with the law. Thus, counsels' advice in these cases represents reasonable cause.  As the United States Supreme Court has stated in this context:

> When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice.  Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney.  To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place.  'Ordinary business care and prudence' do not demand such actions.

United States v. Boyle, 469 U.S. 241, 251 (1985).

69.     Even beyond the Plaintiff's demonstrated reliance on its advisors, the IRM further provides for the abatement of penalties based on a taxpayer's absence of knowledge of the law where coupled with other relevant circumstances.  See former IRM (20)333.5, stating:

> where difficult and complex issues are involved and there is no Service guidance with respect to the issue, reasonable persons might well differ as to the appropriate tax treatment of the issue.  Therefore, the taxpayer may have reasonable cause for noncompliance if the taxpayer's position is taken in good faith.

15

70.     There was absolutely no guidance from the IRS with respect to IRC § 419(e) from 1984, the date of the provision's enactment, until mid-2002, when proposed regulations were issued.

71.     In light of the Plaintiff's attempts to comply with the law, Part (20)333.5 provides additional grounds for reasonable cause, and, accordingly, the Plaintiff has reasonable cause for abatement of any penalty that may be assessed against it.

<u>**Relief Sought**</u>

**WHEREFORE**, and for all of the foregoing reasons, this Court should:

    i.   hold that, as this dispute involves a penalty, and not a tax, the Anti-Injunction Act and the Declaratory Judgment Act do not apply;

    ii.  hold that a case or controversy exists;

    iii. declare that Plaintiff is not, and never has been a Material Advisor;

    iv.  declare that the Defendant must return all property it has taken from Plaintiff in its unauthorized raid of Plaintiff's offices;

    v.   declare that the Grist Mill Trust is not substantially similar to an arrangement as described in Notice 2009-59, Rev. Rul. 2007-65 or Notice 2007-83;

    vi.  declare that the Grist Mill Trust qualifies as a welfare benefit plan as described under IRC § 419(e);

    vii. declare that the contributions made to the Grist Mill Trust are deductible under IRC §§ 419(b) and 419(d);

    viii. enjoin the imposition of a penalty under IRC § 6708;

    ix.  declare that the IRS must withdraw its investigation into the Plaintiff and the Grist Mill Trust; and

x.   award the Plaintiff its costs and attorney's fees associated with this matter.

Dated:  April 19, 2013
         Stamford, Connecticut

NOVA BENEFIT PLANS, LLC as Sponsor of the
GRIST MILL TRUST


As Local Counsel

By: _____
     Joseph M. Pastore III (ct11431)
     PASTORE & DAILEY LLC
     4 High Ridge Park, 3rd Floor
     Stamford, CT 06905
     (203) 658-8455
     (203) 348-0852 (fax)
     E-mail:  jpastore@psdlaw.net

     and

As Lead Counsel

     Ira Stechel (*pro hac admission to be sought*)
     John Morin (*pro hac admission to be sought*)
     Wormser, Kiely, Galef & Jacobs LLP
     825 Third Avenue
     New York, New York 10022
     (212) 573-0609
     (212) 687-5703 (fax)

*Its Counsel*